# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **G.H.**

**No. 18-0795** (Cabell County 15-JA-274)

**FILED**

**February 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father G.N., by counsel Michael S. Bailey, appeals the Circuit Court of Cabell County's August 10, 2018, order terminating his parental rights to G.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Shawn Bartram, filed a response on behalf of the child in opposition of the termination of petitioner's parental rights. The foster parent intervenors, by counsel Jacquelyn Stout Biddle, also filed a response in support of the circuit court's order and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in failing to properly consider the paternal grandmother for placement of the child and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, the DHHR filed an abuse and neglect petition alleging that the mother overdosed on substances in the child's presence. The DHHR alleged that petitioner was incarcerated and, as a result, failed to provide for the child financially, emotionally, or psychologically. The circuit court held an adjudicatory hearing in November of 2015. The circuit court found that petitioner was incarcerated for possession of heroin and that his parole date was in May of 2017. The circuit court found that he was unable to parent the child due to his incarceration. He was adjudicated as an abusing parent based upon his neglect of the child. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

mother was granted an improvement period and subsequently made substantial progress in addressing her substance abuse issues.

The child was placed in three different homes during the first few months of the proceedings. Approximately six months after the child was removed from her mother's custody, petitioner requested that his attorney inquire into whether petitioner's mother could be considered for placement of the child. According to the DHHR, petitioner's mother had not indicated a desire, willingness, or ability to undertake the placement of the child. Therefore, the circuit court deemed placement with the grandmother inappropriate. In November of 2016, the child was placed in a foster home where she lived for the remainder of the proceedings.

In January of 2017, the circuit court held a review hearing. Petitioner did not attend, but was represented by counsel. The circuit court found that petitioner was in federal custody in Ohio. According to the mother, she was fearful of petitioner and wanted his parental rights to be terminated. In May of 2017, the circuit court held a review during which the mother admitted that she had relapsed on heroin in April of 2017. The circuit court terminated the mother's improvement period and set the matter for disposition. In July of 2017, a dispositional hearing was held. Petitioner appeared for the hearing, having been paroled in June of 2017 after serving three-and-a-half years on a sentence for conspiracy in a drug-related offense. The circuit court proceeded to terminate the mother's parental rights and rescheduled petitioner's dispositional hearing.

In September of 2017, petitioner attended a review hearing in the matter and requested a post-adjudicatory improvement period, which the circuit court granted. The circuit court was informed that petitioner completed life skills classes while imprisoned, maintained regular contact with his service provider, produced negative drug screens, and was employed. In October of 2017, petitioner was granted supervised visitation with the seven-year-old child at the DHHR's discretion. The circuit court held a review hearing regarding petitioner's post-adjudicatory improvement period in December of 2017. According to the DHHR, the child's therapist reported that the child was regressing due to contact with petitioner. Additionally, the therapist stated that it would be detrimental to the child's mental and emotional wellbeing to be removed from her foster family. The therapist also reported that the child had been crying often at school, exhibited poor behavior, and frequently got into trouble at school "since the changes of visiting" petitioner. The therapist expressed concerns that the child would continue negative behaviors if she had to continue visiting or had to reside with petitioner, with whom she had no contact since she was approximately one year old. The guardian reported that the child did not want to attend visitation with petitioner. According to the DHHR, petitioner and the child attended supervised visits, but they did not seem to engage with each other or have a bond.

On March 1, 2018, the DHHR filed a motion to terminate visitation. According to the DHHR, petitioner was essentially a stranger to the child due to his incarceration for most of the child's life. The DHHR explained that the child "has not handled visits with [petitioner] well. She is anxious and upset before and during visits. Her performance at school has deteriorated." Further, the DHHR noted in its motion that the child reported to her therapist that she was afraid of petitioner. The therapist expressed concern for the child's mental wellbeing. A service provider also reported that the child "started hysterically crying" when the provider arrived to

transport the child to a visit with petitioner. The circuit court held a review hearing in May of 2018. The circuit court noted that the matter was "almost three years old" and that the child did not know petitioner through no fault of her own. The circuit court further stated that it is "difficult for the [circuit c]ourt to justify subjecting the child to any further visitation, which is scary to the child. The polar star in abuse and neglect proceedings is the best interests of the respondent child." The circuit court found that the termination of petitioner's parental rights was in the child's best interests. However, the circuit court held its decision in abeyance in order for the parties to attempt to determine how to develop and maintain some type of relationship between petitioner and the child.

The circuit court held the final dispositional hearing on July 11, 2018. Petitioner requested that the circuit court accept the voluntary relinquishment of his guardianship rights instead of terminating his parental rights. However, the circuit court found that petitioner's request was not an "adequate disposition in this case. The respondent child needs and deserves permanency in the form of an adoptive home." The circuit court also found that there was no alternative disposition available, short of the termination of petitioner's parental rights, to "assure the physical and emotional well-being" of the child and that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future. Lastly, the circuit court found that the termination of petitioner's parental rights was necessary for the child's welfare. Ultimately, the circuit court terminated petitioner's parental rights in its August 10, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

---

[2]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in her current foster home.

First, petitioner argues that the circuit court erred in failing to consider his mother for placement of the child. In support, petitioner asserts that his mother was present for hearings while he was incarcerated and that she attempted to contact the DHHR regarding placement of the child. However, petitioner fails to cite to any evidence in the record to support his assertion in violation of Rule 10 of the West Virginia Rules of Appellate Procedure.[3]

Pursuant to West Virginia Code § 49-4-114(a)(3), the DHHR "shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker." However, according to the DHHR, petitioner's mother failed to express a desire, willingness, or ability to undertake the placement of the child. The circuit court considered placement with petitioner's mother and ultimately found placement with her was inappropriate for the child. Therefore, the circuit court did not err.

Next, petitioner argues that the circuit court erred in terminating his parental rights. In support, he contends that the condition that caused the neglect of the child was corrected because he was released from incarceration.[4] We do not find petitioner's argument persuasive. It is

---

[3]Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that the

argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

[4]In a separate assignment of error, petitioner argues that in terminating his parental rights, the circuit court failed to consider the plain language of West Virginia Code § 49-4-605(a)(4) which provides as follows:

Except as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: . . . If a parent whose child has been removed from the parent's care, custody, and control by an order of removal voluntarily fails to have contact or attempt to have contact with the child for a period of 18 consecutive months: *Provided,* That failure to have, or attempt to have, contact due to being incarcerated, being in a medical or drug treatment or recovery facility, or being on active military duty shall not be considered voluntary behavior.

Petitioner's argument on this issue, however, is without merit. This section is inapplicable to the circuit court's decision to terminate parental rights because it sets forth situations in which the DHHR is required to seek termination of parental rights. On the contrary, the circuit court ultimately decided to terminate petitioner's parental rights pursuant to West Virginia Code § 49-4-604(b)(6).

uncontested that petitioner was released from incarceration and then fully complied with his post-adjudicatory improvement period, including participation in visits with the child. However, the record shows that petitioner was adjudicated as an abusing parent due to his neglect of the child for extended periods of time throughout her life, not only when he was incarcerated. Petitioner was ultimately unable to remedy the lasting effects the child suffered due to years of neglect.

West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. West Virginia Code § 49-4-604(c) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, petitioner failed to provide any financial, emotional, psychological, or other support for the child for most of the child's life. Petitioner was released from incarceration in June of 2017 after serving a three-and-a-half year sentence, when the child was approximately seven years old. However, the record shows that petitioner was absent from the child's life since she was approximately one year old. There is no evidence that petitioner ever provided any support to the child, even prior to his incarceration.

Although petitioner attended visits with the child and complied with the terms and conditions of his post-adjudicatory improvement period, the child suffered from severe emotional distress and behavioral issues due to visiting with petitioner. "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). The parties worked together for several months to assist petitioner and the child with forming a relationship. After several months of visitation, petitioner and the child were unable to form a bond because petitioner was a stranger to the child and the child was afraid of him. Because contact with petitioner caused the child emotional trauma and led to behavioral issues, the circuit court found that the termination of petitioner's parental rights was in the child's best interest. The termination of petitioner's parental rights was necessary in order to establish permanency for the child. At the time of disposition, the child had been in foster care for nearly three years. Additionally, despite his efforts, because petitioner was unable to establish a relationship with the child after years of neglect, the circuit court found no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future.

Moreover, to grant petitioner an alternative disposition would only delay permanency for the child. We have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va.Code [§] 49-6-5(b) [now West Virginia Code §

5

49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error with the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 10, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6